UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS, No. 11-10-10759 JA

    Debtor.

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

    Plaintiff,

v.    Adversary No. 12-01142 J

KATHLEEN WILSON,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Defendant's Motion to Dismiss ("Motion to Dismiss"). Plaintiff Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors (the "Trustee") filed a response and a supplemental response in opposition to the Motion to Dismiss. *See* Docket Nos. 9 and 19. This adversary proceeding is one of many adversary proceedings initiated by the Trustee seeking to recover payments made by Vaughan Company Realtors ("VCR") to parties who invested in VCR's promissory note program. The Trustee asserts that VCR operated as a Ponzi scheme. She seeks to recover certain transfers made to Defendant Kathleen Wilson under several theories, including avoidance of transfers under the actual fraud and constructive fraud provisions of 11 U.S.C. § 548 and applicable state law. After consideration of the Motion to Dismiss and the response thereto, and being otherwise sufficiently informed, the Court finds that the Motion to Dismiss should be granted as to the

Trustee's claims for turnover (Count 1) and for fraudulent transfers under state law based on insider status (Count 7) and denied as to all remaining claims.

APPLCIABLE STANDARDS FOR EVALUATING A MOTION TO DISMISS

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012, Fed.R.Bankr.P. In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). The applicable standard for assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is found in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under *Twombly,* in order to survive a motion to dismiss under Rule 12(b)(6) the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Twombly,* 550 U.S. at 570. In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678) (citing *Twombly,* 550 U.S. at 556).

The Court takes a two-step approach in evaluating a motion to dismiss: first, the Court must accept as true all of the allegations contained in a complaint disregarding legal conclusions "clothed in factual garb;"[1] *Iqbal*, 129 S.Ct. at 1949; *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012); and second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950; *Khalik*, 671 F.3d at 1190. "Thus, mere

---
[1] The phrase "clothed in factual garb" is quoted from *In re BH S & B Holdings LLC*, 420 B.R. 112, 132 (Bankr.S.D.N.Y. 2009).

'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik*, 671 F.3d at 1191(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, in examining a complaint under Rule 12(b)(6), the Court will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

Consistent with Fed.R.Civ.P. 12(b)(6), "a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule." *Miller v. Shell Oil Co*., 345 F.2d 891, 893 (10th Cir. 1965). For example, it may be appropriate to consider whether a complaint is barred by a statute of limitations "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Properties, Inc*., 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980). On the other hand, if the affirmative defense is based on matters outside the complaint, a disposition of the defense under Rule 12(b)(6) is improper. *Miller v. Shell Oil Co*., 345 F.2d at 893.

With these principles in mind, the Court will evaluate the sufficiency of the Complaint in light of the Motion to Dismiss.

## ALLEGATIONS AND CLAIMS CONTAINED IN THE COMPLAINT

The Complaint contains eighty six numbered paragraphs and consists of nine separate counts. Paragraphs 1 through 48 include allegations regarding the nature of the proceeding, jurisdiction and venue, the alleged transfers, and the fraudulent Ponzi scheme allegedly perpetrated by Douglas Vaughan and his company, VCR. The allegations relating to Ms. Wilson's actions include the following:[2]

---

[2] The Court assumes for purposes of ruling on the Motion to Dismiss that all allegations in the complaint are true. The Court is not making any findings of fact in this opinion.

From 2000 through 2010, Ms. Wilson invested $70,000.00 into VCR's promissory note program with a promised rate of return of 18% per annum. Complaint, ¶¶ 29-30. VCR made payments on Ms. Wilson's promissory notes for the benefit of Ms. Wilson. Complaint, ¶ 32. Ms. Wilson received at least $65,940.95 in transfers from VCR. Complaint, ¶ 33. Ms. Wilson received at least $32,915.43 in transfers from VCR from February 22, 2006 through the date that VCR filed its voluntary bankruptcy petition (the "Petition Date"). Complaint, ¶ 34. Ms. Wilson received at least $20,315.39 in transfers from VCR from February 22, 2008 through the Petition Date. Complaint, ¶ 35. The interest rate that Ms. Wilson was to receive on her investment was unrealistically high. Complaint, ¶ 36. Ms. Wilson knew or should have known that the alleged interest payments on her note(s) did not reflect legitimate profits from the operation of VCR and that Douglas Vaughan was using VCR to operate a Ponzi scheme. Complaint, ¶¶ 37 and 39. Ms. Wilson ignored clear signs and "red flags" that Mr. Vaughan was causing VCR to operate a Ponzi scheme. Complaint, ¶ 42.

Paragraphs 49 through 86 incorporate paragraphs 1 through 48 by reference and set forth each claim as a separate count. The counts are:

| | |
|---|---|
| Count 1 | Turnover and Accounting under 11 U.S.C. § 542 |
| Count 2 | Actual Fraud under 11 U.S.C. § 548(a)(1)(A) based on alleged transfers to Ms. Wilson made within two years of the date of the filing of the VCR bankruptcy case |
| Count 3 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to Ms. Wilson made within two years of the date of the filing of the VCR bankruptcy case |
| Count 4 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to Ms. Wilson made within four years of the date of the filing of the VCR bankruptcy case |

| Count 5 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to Ms. Wilson made within four years of the date of the filing of the VCR bankruptcy case |
|---|---|
| Count 6 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) and/or 11 U.S.C. § 544 as to Ms. Wilson |
| Count 7 | Fraudulent transfer (past creditors) under state law, N.M.S.A. §56-10-19(B) and/or 11 U.S.C. § 544 as to Ms. Wilson |
| Count 8 | Undiscovered fraudulent transfers based on state law |
| Count 9 | Disallowance of Ms. Wilson's Claims under 11 U.S.C. § 502(d), or, alternatively, Equitable Subordination of her Claims under 11 U.S.C. § 510(c) |

## DISCUSSION

The Trustee consents to the dismissal, without prejudice, of her claim for turnover based on 11 U.S.C. § 542.[3] Accordingly, the Court will dismiss Count 1.

### *1. Whether the Trustee has standing to pursue her fraudulent transfer claims*

As an initial matter, Ms. Wilson contends that the Trustee lacks constitutional standing to pursue the fraudulent transfer claims under 11 U.S.C. §§ 544 and 548. Ms. Wilson argues that the Trustee lacks standing because VCR did not have an interest in the funds it transferred to Ms. Wilson. Ms. Wilson reasons that VCR never took title to the "stolen money" it obtained from investors and therefore suffered no injury by using the money it stole from one investor to pay another investor. The Court will confine its ruling on standing to Ms. Wilson's contention that VCR never held a valid interest in the funds the Trustee seeks to recover.

---

[3]Generally, a trustee may not use the turnover provisions of 11 U.S.C. § 542 to recover a fraudulent transfer because the fraudulently transferred property does not become property of the bankruptcy estate until the transfer is avoided and recovered. *See, e.g, In re Amcast Indus. Corp.,* 365 B.R. 91, 122 (Bankr.S.D.Ohio 2007) (recognizing that an action for turnover under § 542 "may be used to compel turnover of estate property whose transfer from the estate has been avoided and ownership is no longer in dispute[,]" but, in order to "state a claim for turnover, the plaintiff must allege that the transfer of funds has already been avoided or that the property is otherwise the undisputed property of the estate.") (internal citations omitted); *In re Strom,* 2013 WL 265071, *8 (Bankr.D.N.M. 2013) (J. Thuma) ("While a party may use § 542(a) to compel turnover of estate property whose transfer has been avoided, … the Trustee cannot use § 542(a) in lieu of a fraudulent transfer action.").

-5-

Case 12-01142-j    Doc 27    Filed 03/11/13    Entered 03/11/13 18:41:35 Page 5 of 19

To satisfy the standing requirements under Article III of the United States Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Southern Utah Wilderness Alliance v. Palma* , --- F.3d ---, 2013 WL 71780, *7 (10th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

One of the requirements for avoiding a transfer under Sections 544 and 548 of the Bankruptcy Code is that the transfer was a "transfer of an interest of the debtor in property." 11 U.S.C. § § 544(b) and 548(a)(1). Ms. Wilson is, in effect, arguing that VCR had no interest in the property (*i.e.* funds) it transferred to her because VCR procured the funds by fraud. The Tenth Circuit Court of Appeals considered a similar argument in *In re Ogden,* 314 F.3d 1190 (10th Cir. 2002) in the context of a preferential transfer claim under 11 U.S.C. § 547. Like Sections 544 and 548, one of the requirements for avoiding a preferential transfer under Section 547 is a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). Courts generally view the terms "interest of the debtor in the property" and "property" broadly in the bankruptcy context. *Id.* at 1197. "Interest of the debtor in property," as that phrase is used in Section 547(b), is coextensive with "interests of the debtor in property" as that phrase as used in 11 U.S.C. § 541(a)(1). *Id.* (citing *Begier v. I.R.S.*, 496 U.S. 53, 59 n. 3, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)). Sections 544 and 548(a)(1) also use that phrase. As the *Odgen* court explained, "'[p]roperty of the debtor' subject to [Sections 544, 547, and 548] is best understood as that property that would have been part of the estate had it not been transferred before the

commencement of [the case].'" *Ogden,* 314 F.3d at 1197 (quoting *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.1988)).

For purposes of most bankruptcy proceedings, "'[p]roperty interests are created and defined by state law,'" while bankruptcy law governs the extent to which that interest is property of the estate. *Id.* (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). In *Ogden,* the Tenth Circuit analyzed applicable state law to determine whether the debtor had an interest in funds transferred to the target of the preferential transfer claim as part of a Ponzi scheme. *Id.* at 1197-1198. Under Utah law, a debtor that procures funds by fraud obtains "a legally recognized interest of defeasible title in those funds" and may transfer title to the funds to a bona fide purchaser. *Id.* at 1198.[4] The *Ogden* court concluded that because the debtor had defeasible title to the funds obtained as part of a Ponzi scheme, the funds would have been property of the bankruptcy estate under Section 541 such that the debtor had an interest in them for the purposes of Section 547(b).[5]

Likewise, under New Mexico law, a person who obtains property by fraud acquires a legal interest in the property and may convey good title to a bona fide purchaser for value. *See O'Brian v. Chandler*, 107 N.M. 797, 800, 765 P.2d 1165, 1168 (1988) (under the Uniform Commercial Code, a buyer of goods obtained by fraud acquires voidable title and may convey good title to a bona purchaser for value); *State ex rel. State Tax Commission v. Garcia*, 77 N.M. 703, 708, 427 P.2d 230, 234 (1967) (a deed obtained by fraud is voidable, not void, and cannot be voided upon a sale of the property to a good-faith bona fide purchaser); *Kokoricha v. Estate of Keiner*, 148 N.M. 322, 328, 236 P.3d 41, 47 (Ct. App. 2010) (same). The perpetrator of the

---

[4] *In re Universal Clearing House Co.*, 62 B.R. 118, 124 (D.Utah 1986) (noting that one "who obtains property by fraud may transfer good title to a bona fide purchaser" and therefore has "defeasible title" in the property).
[5] *See also Wagner v. Doe (In re Vaughan)*, 471 B.R. 263, 291 (Bankr.D.N.M. 2012) (J. Starzynski) (finding that VCR had an interest in property under Section 547 notwithstanding the fact that Douglas Vaughan obtained the investment funds by fraud).

-7-

fraud obtains a voidable interest in the property, which qualifies as a legally recognized interest of defeasible title in the property. *Cf. Cornell v. Albuquerque Chemical Co., Inc.,* 92 N.M. 121, 123, 584 P.2d 168, 170 (Ct. App. 1978) ("Defeasible title" is title that is "liable to be annulled or made void, but not one that is already void or an absolute nullity."), *abrogated on other grounds by Albuquerque Concrete Coring Co. v. Pan Am Servs., Inc*., 118 N.M. 140, 879 P.2d 772 (1994).

Here, by obtaining funds belonging to Ms. Wilson and other investors by fraud, VCR obtained a legally recognized interest of defeasible title to the funds. Under *Odgen,* the funds would have therefore been property of the VCR bankruptcy estate pursuant to Section 541 had the funds not been transferred before the commencement of the case. Consequently, payment of such funds to Ms. Wilson constituted the transfer of an interest of VCR in property subject to Sections 544(b) and 548.

The Court concludes that the Trustee has standing to seek to recover transfers to Ms. Wilson under Sections 544(b) and 548(a). The Court will therefore deny the Motion to Dismiss on the basis that the Trustee lacks constitutional standing to avoid transfers of funds procured by fraud.

### 2. Whether the doctrine of in pari delicto is a complete bar to the Trustee's claims[6]

Ms. Wilson also asserts that the Trustee's claims are barred by the doctrine of *in pari delicto*. The doctrine of *in pari delicto* prohibits a wrongdoer from profiting from his or her own wrongful acts. *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The

---

[6] Although the doctrine is an affirmative defense, the Court will address it in the context of the Motion to Dismiss because "the defense appears plainly on the face of the complaint itself." *Lee v. Rocky Mountain UFCW Unions and Employers Trust Pension Plan,* 1993 WL 482951, *1 (10th Cir. 1993) (citing *Miller v. Shell Oil Co*., 345 F.2d 891, 893 (10th Cir.1965)). It is clear from the Complaint that the Trustee contends Douglas Vaughan caused VCR to perpetrate a Ponzi scheme. Since the law is well settled regarding whether VCR's alleged wrongdoing bars any claims under Sections 544 and 548, no additional facts or evidence would change the result reached in this opinion.

doctrine derives from the latin phrase "*in pari delicto potior est conditio defendentis*," which means "in the case of equal or mutual fault … the position of the [defending] party … is the better one." *Mosier v. Calliter, Nebeker & McCullough*, 546 F.3d 1271, 1275 (10th Cir. 2008) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 2626, 86 L.Ed.2d 215 (1985)). It is grounded on two premises: "first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id.*

Generally, when wrongful conduct is perpetrated by a debtor who subsequently commences a bankruptcy case, the defense of *in pari delicto* is available in an action against a third party by a bankruptcy trustee if the defense could have been raised against the debtor before the commencement of the case. *Id.* (internal quotations omitted). *See also Official Committee of Unsecured Creditors of PSA, Inc., 4*37 F.3d 1145, 1150 (11th Cir. 2006) ("If a claim of [the debtor] would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense."); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir.1989) (the "trustee is 'subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'") (quoting 2 Collier on Bankruptcy ¶ 323.02[4]).

A bankruptcy trustee typically commences two kinds of actions on behalf of the debtor's estate: (1) actions brought by the trustee as a successor to the debtor's interests under 11 U.S.C. § 541; and (2) actions brought under one of the trustee's avoidance powers, which include actions brought under 11 U.S.C. §§ 544(b), 547, and 548. *Mosier,* 546 F.3d at 1275, n.4. The Tenth Circuit has determined that, where the trustee is pursuing a claim that became property of the

estate under Section 541 and the debtor engaged in wrongful conduct in connection with that claim, the *in pari delicto* doctrine may shield the defendant from liability. *Id.* at 1275 (barring a trustee from pursuing certain claims against third parties that became property of the estate under Section 541 where the debtor engaged in a Ponzi scheme). Under Section 541, the bankruptcy estate includes all interests and claims of the debtor as of the petition date. 11 U.S.C. § 541(a)(1). Thus, the doctrine of *in pari delicto* can be used to prohibit the trustee from pursuing certain claims or causes of action belonging to the debtor when it commenced its bankruptcy case. *In re Hedged-Investments Associates, Inc.,* 84 F.3d 1281, 1285 (10th Cir. 1996) ("[T]o the extent [the trustee] must rely on 11 U.S.C. § 541 for his standing in th[e] case," he or she will not be insulated from the wrongdoing of the debtor).

However, the *in pari delicto* doctrine does not bar actions brought under the trustee's avoidance powers pursuant to 11 U.S.C. §§ 544(b), 547, and 548. *See In re Fordu,* 209 B.R. 854, 863 (6th Cir. B.A.P. 1997) ("Courts have consistently recognized that [a] [t]rustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances.").[7] The rationale for distinguishing between claims that became property of the estate under Section 541 and claims arising under Sections 544(b), 547, and 548, for purposes of applying the *in pari delicto* doctrine, derives from whether the pre-petition debtor could have asserted the claims. With limited exceptions not applicable here, claims that became property of the estate under Section 541 are claims the debtor could have

---

[7] *See also In re Personal and Business Ins. Agency,* 334 F.3d 239, 246-247 (3rd Cir. 2003) (holding that a debtor's conduct is not imputed to the trustee in an avoidance action under Section 548); *Kipperman v. Onex Corp.,* 411 B.R. 805, 880 (N.D.Ga.2009) ("*[I]n pari delicto* may not be used against the trustee to bar fraudulent transfer and preference actions"); *Terlecky v. Abels,* 260 B.R. 446, 453 (S.D.Ohio 2001) ("[T]he fact that the [d]ebtors participated in the fraudulent scheme does not … bar the [t]rustee from pursuing … fraudulent conveyance claims."); *In re Norvergence, Inc.,* 405 B.R. 709, 742 (Bankr. D.N.J. 2009) (finding that the *in pari delicto* defense was inapplicable when a trustee brings an action under Sections 544(a), 544(b) or 548, but applicable to Section 541 based actions; *In re Fuzion Technologies Group, Inc.*, 332 B.R. 225, 232 (Bankr.S.D.Fla.2005) (same).

-10-

asserted pre-petition.[8] Because the bankruptcy trustee stands in the shoes of the pre-petition debtor as to those claims, he or she is tainted by the debtor's wrongdoing when asserting the claims. In contrast, Sections 544(b), 547, and 548 confer avoidance powers onto the trustee that do not exist independently of or arise prior to the commencement of a bankruptcy case. As a result, such claims could not have been asserted by the pre-petition debtor. Because the bankruptcy trustee does not stand in the shoes of the pre-petition debtor as to those claims, the debtor's pre-petition wrongdoing does not taint the claims

Further, with respect to Section 544(b), the trustee stands in place of an unsecured creditor rather than the debtor. *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir.1996). Since the claim is viewed from the creditor's perspective, the claim has not been tainted by the debtor's wrongdoing. Thus, the bankruptcy trustee is not subject to the *in pari delicto* defense in actions commenced under Section 544(b). *See, e.g., In re Porter McLeod, Inc.,* 231 B.R. 786, 794 (Bankr. D.Colo. 1999) ("[T]he doctrine [of *in pari delicto*] applies only to the trustee in his [or her] 'debtor' status, not as 'creditor.'").

In the present case, Sections 544(b) and 548 confer avoidance powers onto the Trustee. The Trustee's avoidance claims did not exist prior to commencement of the VCR bankruptcy case and did not arise independently of the commencement of a bankruptcy case. The Trustee therefore does not stand in VCR's shoes as to those claims, and VCR's wrongdoing does not taint the claims. Further, as to the claims under Section 544(b), the Trustee stands in the shoes of any unsecured creditor entitled to assert a fraudulent transfer claim under the New Mexico Fraudulent Transfer Act, not in VCR's shoes.

---

[8] Certain claims that could not have been asserted pre-petition may be property of the estate under Section 541 if the claims are sufficiently rooted in the pre-bankruptcy past. *See Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 515 (1966) (decided under prior law) and its progeny. Since the Trustee's avoidance claims do not arise independently of commencement of a bankruptcy case, that exception is not relevant to the issue before the Court.

Based on the foregoing, the Court is persuaded that the doctrine of *in pari delicto* does not apply to the Trustee's avoidance action claims against Ms. Wilson under Sections 544(b) or 548.[9] The Court will therefore deny the Motion to Dismiss on the basis that the Trustee's claims are barred by the defense.

*3. The sufficiency of the Trustee's Actual Fraud Claims (Counts 2 and 4)*

The Trustee asserts claims based on actual fraud under the Bankruptcy Code and under state law. A party asserting a claim for actual fraud under either 11 U.S.C. § 548(a)(1) or applicable state law is subject to the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.[10] The actual fraud provision found in 11 U.S.C. § 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ... indebted.

11 U.S.C. § 548(a)(1). Similarly, N.M.S.A.1978 § 56-10-18(A)(1) includes the requirement that the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Ms. Wilson asserts that the Complaint is deficient because the Trustee has failed to

---

[9] VCR commenced the Chapter 11 case on February 22, 2010. VCR acted as the debtor in possession until April 29, 2010, when Ms. Wagner was appointed as the Chapter 11 Trustee. The parties did not raise the issue of whether the *in pari delicto* doctrine can bar a claim under Sections 544(b), 547, and 548 where the Chapter 11 case was originally administered by the party accused of wrongdoing. However, "[a] debtor in possession stands in the shoes of the bankruptcy trustee, generally having the same rights, powers, duties and functions." *Soto-Rios v. Banco Popular de Puerto Rico*, 662 F.3d 112, 115 n. 2 (1st Cir.2011) (citing 11 U.S.C. § 1107(a)). *See also In re Vitro S.A.B. de CVI,* 701 F.3d 1031, 1049 n. 20 (5th Cir. 2012) (same); *In re Valley Health System*, 429 B.R. 692, 713 (Bankr. C.D.Cal. 2010) (same). Therefore, such a distinction does not change the result.

[10] *See In re Tronox, Inc.,* 429 B.R. 73, 92 (Bankr.S.D.N.Y.2010) (stating that the requirements for properly asserting an intentional fraudulent transfer claim fulfill Rule 9(b)'s purpose of providing detailed notice of the alleged fraud claims to defendants); *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 317, 329 (Bankr.S.D.N.Y.2011) (stating that actual fraudulent transfer claims must meet the heightened pleading requirements of Rule 9(b) whether brought under the Bankruptcy Code or applicable New York fraudulent transfer law); *In re Caremerica, Inc.*, 409 B.R. 346, 353 (Bankr.E.D.N.C.2009) ("A claim alleging an actual fraudulent transfer under § 548 must satisfy the particularity requirement of Rule 9(b).") (citations omitted).

plead with sufficient particularity the requisite fraudulent intent with respect to each transfer sought to be avoided.

In *Wagner v. Pruett (In re Vaughan Co., Realtors),* 477 B.R. 206, 218 (Bankr.D.N.M. 2012), this Court adopted the "Ponzi scheme presumption." Under that rule, "it is presumed that any transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors." *Id.* at 218-219 (internal quotations omitted).[11] The Court also determined in its previous rulings that the Trustee alleged sufficient facts, in complaints substantially similar to the Trustee's complaint against Ms. Wilson, to state a claim that: (1) VCR had an "actual intent to defraud" under the Ponzi scheme presumption; and (2) the defendant-investor was sufficiently connected to the alleged Ponzi scheme. *Pruett,* 477 B.R. at 220-221; *Wagner v. Cunningham (In re Vaughan Co., Realtors),* 481 B.R. 752, 760-761 (Bank.D.N.M. 2012). The allegations here are nearly identical to the allegations in those adversary proceedings. Based on its previous rulings, the Court concludes that the Complaint contains sufficient facts to show an "actual intent to defraud" under Section 548(a) and applicable state law.

The Court will therefore deny the Motion to dismiss as to Counts 2 and 4 of the Complaint.

### 4. The sufficiency of the Trustee's Constructive Fraud Claims (Counts 3, 5, and 6)

Ms. Wilson also seeks to dismiss the Trustee's constructive fraud claims. She argues that the amount the Trustee seeks to recover is less than the amount Ms. Wilson initially invested and

---

[11] *See also Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir.2011) ("With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b).") (citations omitted); *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir.2008) ("'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under 548(a)(1) or a state's equivalent to that section.") (quoting *In re Agricultural Research and Tech. Group, Inc.,* 916 F.2d 528, 535 (9th Cir.1990)); *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir.2007) ("In this circuit, proving that IERC operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made.") (internal citations omitted).

-13-

that Ms. Wilson therefore provided reasonably equivalent value in exchange for what she received. Constructive fraud under 11 U.S.C. § 548(a)(1)(B) requires the plaintiff to establish that the debtor "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i).[12] Similarly, the constructive fraud provisions under the New Mexico Fraudulent Transfer Act contain a requirement that the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer." N.M.S.A.1978 §§ 56-10-18(A)(2) and 56-10-19(A).

The Court previously addressed the issue of a whether an investor who is a "net loser"[13] in the VCR Ponzi scheme received reasonably equivalent value under 11 U.S.C. § 548(a)(1)(B) and N.M.S.A.1978 §§ 56-10-18(A)(2) and 56-10-19(A). *See. Pruett,* 477 B.R. at 221-224. In *Pruett,* the Court determined that an investor without actual knowledge of the Ponzi scheme could provide reasonably equivalent value through a reduction in the amount of his or her claim for restitution. *Id.* at 224. However, because there the Trustee alleged that the investor knew or should have known that the VCR promissory note program was a fraudulent scheme, the Court declined to dismiss the Trustee's claims for constructive fraud. The allegations here are nearly identical to the allegations in *Pruett*. In each case, the Trustee alleged that the defendant turned a blind eye to several red flags that would indicate that VCR was perpetrating fraud, including unrealistically high interest rates and irregular annual returns.

For the reasons stated in *Pruett*, the Court will deny the Motion to Dismiss as to Counts 3, 5, and 6 of the Complaint.

---

[12] To prevail on a constructive fraud claim under 11 U.S.C. § 548(a)(1)(B), the plaintiff must also demonstrate harm to creditors or other parties in interest by satisfying one of three alternative subsections under 11 U.S.C. § 548(a)(1)(B)(ii). Ms. Wilson does not seek dismissal on grounds that the Trustee has failed to allege the elements required to satisfy 11 U.S.C. § 548(a)(1)(B)(ii).
[13] For the purposes of the VCR clawback proceedings, a "net loser" is defined as an investor who received less from VCR than the amount of the investor's original investment.

*5. Whether the stockbroker defense under 11 U.S.C. § 546(e) bars the Trustee's claim for constructive fraud*

Next, Ms. Wilson contends that the Trustee's claims for constructive fraud under 11 U.S.C. § 548(a)(1)(B) should be dismissed pursuant to 11 U.S.C. § 546(e). Commonly known as the "stockbroker defense," Section 546(e) provides, in part: "[n]otwithstanding sections 544, 545, 547 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid [1] a transfer that is a margin payment… or settlement payment … made by or to (or for the benefit of) a … stockbroker …. or … [2] a transfer made by or to (or for the benefit of) a … stockbroker …. in connection with a securities contract." 11 U.S.C. § 546(e).[14] On March 1, 2013, the Honorable William Johnson determined that Section 546(e)'s stockbroker defense was premature at the motion to dismiss stage because the facts supporting the defense do not appear plainly on the face of the complaint. *See* Order Denying In Part Defendant's Motion to Dismiss Concerning Defendant's Argument That 11 U.S.C. § 546(e) Compels Dismissal of Counts 3-8 (Docket No. 236), filed in the United States District Court Case styled *Judith A. Wagner, Chapter 11 Trustee of the Bankruptcy Estate of the Vaughan Company Realtors v. Jonathan Levann, et al.* (Case No. CV-12-817 WJ/SMV). This Court agrees. The Motion to Dismiss is therefore denied as to Counts 3, 5, and 6 on the basis that the Trustee's constructive fraud claims are barred by Section 546(e), without prejudice to either party filing a motion under Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bank.P. 7056.

---

[14] That section provides in full:
> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546.

-15-

### 6. Whether the good faith defense under 11 U.S.C.§ 548(c) bars the Trustee's claims for actual and constructive fraud

Next, Ms. Wilson contends that 11 U.S.C. § 548(c) requires dismissal of Counts 2 and 3 of the Complaint. Section 548(c) provides a safe harbor to transferees who received an otherwise avoidable transfer in good faith and for value. That section provides:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).[15]

Like the stockbroker defense, the good faith defense under Section 548(c) is an affirmative defense. *Perkins v. Haines,* 661 F.3d 623, 626 (11th Cir. 2011) (noting that "§ 548(c) provides a transferee with an affirmative defense" in clawback litigation).[16] Determining whether Ms. Wilson is entitled to the good faith defense under Section 548(c) is a fact intensive inquiry that cannot be conducted in the context of a motion to dismiss. The Court cannot determine, based on the Complaint itself, whether Ms. Wilson acted in good faith. The Court will, therefore, deny Ms. Wilson's request to dismiss the Trustee's fraudulent transfer claims under Sections 548(a)(1)(A) and/or (B), without prejudice to either party filing a motion under Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bank.P. 7056.

---

[15] The Bankruptcy Code does not define good faith. However, the Tenth Circuit has held that "good faith under § 548(c) should be measured objectively." *In re M & L Business Mach. Co., Inc*., 84 F.3d 1330, 1338 (10th Cir. 1996). Thus, "if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent." *Id.*

[16] *See also In re M &L Business Mach Co., Inc.,* 155 B.R. 531, 534 (Bankr.D.Colo. 1993), *aff'd* 84 F.3d 1330 (10th Cir. 1996) (referring to Section 548(c) as an affirmative defense); *In re Blazo Corp.,* 1995 WL 764130, *3 (6th Cir. 1995) (The good faith defense under Section 548(c) "is an affirmative defense as to which the burden of proof rests with the defendant."); *In re Gibco, Inc.,* 185 F.R.D. 296, 300 (D.Colo. 1997) (same).

### 7. The remaining Counts: 7, 8, and 9

Count 7 of the Complaint is based on Section 56-10-19(B) of the New Mexico Fraudulent Transfer Act. That section provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

N.M.S.A.1978 § 56-10-19(B).

Ms. Wilson did not specifically address Count 7 in her Motion to Dismiss, but she requested dismissal of all claims on the ground that the allegations failed to meet the plausibility standard under *Twombly*. The Court agrees that the allegations set forth in Count 7 are deficient, even if the prior factual allegations in the Complaint are incorporated by reference into Count 7. The fraudulent transfers described in N.M.S.A.1978 § 56-10-19(B) apply to a debtor's transfers to insiders of the debtor. N.M.S.A.1978 § 56-10-19(B) (a transfer is fraudulent "if the transfer was made to an insider ..."). There are no allegations in the Complaint that describe Ms. Wilson's relationship to VCR as anything other than an investor. Because the Trustee failed to allege sufficient facts in relation to Ms. Wilson's status as an insider, the Trustee has failed to state a claim under N.M.S.A.1978 § 56-10-19(B). The Court will, therefore, grant the Motion as it relates to Count 7.

Count 8 of the Complaint is based on undiscovered fraudulent transfers under state law. Ms. Wilson does not expressly address Count 8 other than to seek dismissal of all of the Trustee's claims. Because the Court has found that the Complaint otherwise withstands Ms. Wilson's request for dismissal, the Court declines to dismiss Count 8 at this time and will deny the Motion to Dismiss as to Count 8, without prejudice.

Count 9 of the Complaint requests disallowance of Ms. Wilson's claim, or, alternatively, equitable subordination of her claim. Ms. Wilson contends that the requested relief is premature and that the Trustee has not alleged sufficient facts to support disallowance of Ms. Wilson's claim. The Trustee alleges that Ms. Wilson received a transfer that is voidable and that Ms. Wilson has not returned the transfer to the trustee such that her claim should be disallowed under 11 U.S.C. § 502(d). The Trustee also alleges that Ms. Wilson acted inequitably by failing to conduct reasonable due diligence in making her investment and that her conduct caused injury to other creditors or conferred an unfair advantage on Ms. Wilson, which would support a claim for equitable subordination under 11 U.S.C. § 510(c).

The Court concludes that, based on detailed allegations regarding the fraudulent transfers and Ms. Wilson's inequitable conduct, the Trustee has alleged sufficient facts to state a claim under 11 U.S.C. § 502(d) and/or 11 U.S.C. § 510(c). The Court will therefore deny the Motion to Dismiss as to Count 9.

## CONCLUSION

Based on the foregoing, the Court concludes that the Motion to Dismiss will be granted as to Counts 1 (turnover) and 7 (fraudulent transfers under state law based on insider status), denied as to Counts 2 through 6 (actual and constructive fraud under the Bankruptcy Code and state law) and Count 9 (disallowance/equitable subordination of Ms. Wilson's claim), and denied without prejudice as to Count 8 (undisclosed fraudulent transfers under state law. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 11, 2013

COPY TO:

James Askew & Edward Mazel
Askew & Mazel, LLC
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

Michael K Daniels
P.O. Box 1640
Albuquerque, NM 87103-1640